**SO ORDERED.**

**SIGNED this 13 day of August, 2009.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

| | |
|---|---|
| IN RE: | |
| MICHAEL L. KIRKBRIDE and<br>DOLORES A. KIRKBRIDE, | Case Number: 08-00120-8-JRL<br>Chapter 11 |
| Debtors. | |
| ALAN VOTTA CONSTRUCTION,<br>INC., | Adversary Proceeding Number<br>08-00211-8-AP |
| Plaintiff, | |
| MICHAEL L. KIRKBRIDE and<br>DOLORES A. KIRKBRIDE, | |
| Defendants. | |

_____

**ORDER**

This matter came before the court on the debtors' motion for summary judgment. A hearing on this matter was held on June 29, 2009, in Raleigh, North Carolina.

**JURISDICTION**

This court has jurisdiction over the parties and the subject matter of this proceeding

1

pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine.

## UNDISPUTED FACTS

1. During the period of time between February 2004 through January 2005, the Kirkbrides entered into agreements with Alan Votta Construction, Inc. (Alan Votta). The agreements were for the construction, sale, and purchase of residential homes in the towns of Kure Beach and Carolina Beach, North Carolina.

2. The nature of the agreements entailed Alan Votta purchasing land and constructing residential homes thereon. When certificates of occupancy were issued, the Kirkbrides would obtain financing to purchase the homes from Alan Votta as development property, intending to resell the properties. In total there were agreements for the construction, sale, and purchase of six single-family homes. There were also agreements for the construction of single-family homes on two tracts of land already owned by the Kirkbrides, which are not subject to this action.

3. Three of the six contracts are involved in this action: 103 N. Seahorse Place, 109 N. Seahorse Place, and 405 Spencer Farlow Drive.

4. In April 2006, the Kirkbrides learned they could not obtain the requisite financing to purchase these homes from Alan Votta for two reasons: 1) they concurrently owned too many other properties, and 2) there were insufficient reserves.

5. After learning of the Kirkbrides' inability to obtain financing, Alan Votta listed the three properties for sale. Two of the three properties were sold to third party purchasers for

  less than the original purchase agreement price.

6. The Kirkbrides filed for relief under Chapter 11 of the Bankruptcy Code on January 8, 2008.

## PROCEDURE

Under Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy by Bankruptcy Rule 7056, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962).

## ANALYSIS

"A condition precedent is an event which must occur before a contractual right arises . . . [B]reach or non-occurrence of a condition prevents the promisee from acquiring a right . . . but subjects him to no liability." Carson v. Grassmann, 182 N.C.App 521, 524, 642 S.E.2d 537, 539 (2007). The debtors assert that the purchase agreements for the subject properties never came into effect as a result of their inability to obtain satisfactory financing. Thus, they are entitled to the return of escrow monies. The court must determine if the failure to acquire financing was a

condition precedent of the contract, or if the debtors committed an anticipatory breach in which case the plaintiff would retain the escrow funds and be entitled to damages.

A condition precedent foreshadows contractual rights. Terms of a condition precedent often contain words such as "when, after, as soon as and the like [which] give clear indication that a promise is not to be performed except upon the happening of the stated event." Williams v. P.S. Investment Co., Inc., 101 N.C.App. 707, 709 (1991). In other words, a contract does not become enforceable until such condition is satisfied. By contrast, an anticipatory breach is one committed in advance of the performance specified in an enforceable contract. Cook v. Lawson, 3 N.C. App. 104, 107, 164 S.E.2d 29, 32 (N.C.App. 1968). "Ordinarily, in order to constitute anticipatory repudiation, there must be a definite, specific, positive, and unconditional repudiation of the contract by one of the parties to the contract." BI-Tech North, Inc. v. Lockheed Martin Corp., 129 Fed.Appx. 9, at * 15, 2005 WL 564154 (4th Cir. March 10, 2005). A party evidences an anticipatory breach by exhibiting a present intention to refuse to perform in the future. Cook, 3 N.C. App at 107; 17A Am. Jur. 2d Contracts § 716.

The three properties: 103 N. Seahorse Place, 109 N. Seahorse Place, and 405 Spencer Farlow Drive, were described in three separate purchase agreements. Each purchase agreement was written in boilerplate language on a standardized fill-in-the blank form. There were five sections of each contract, the fifth entitled "Conditions." The pertinent language reads:

"Buyer must be able to obtain a conventional loan in the principal amount . . . [B]uyer shall use buyer's best efforts to secure the lender's customary loan commitment letter . . . and to satisfy all terms and conditions of the loan commitment letter by closing."

If on its face the contract terms are clear and unambiguous, then the contract shall be enforced according to its terms. Williams, 101 N.C.App. at 709. The word "must" confers the impression

4

of an absolute event, the manifestation of which is central to the formation of an enforceable contract. As such, the court finds that the Kirkbrides were subject to a condition precedent.

In North Carolina, conditions precedent "include the implied promise that the purchaser will act in good faith and make a reasonable effort to secure the financing." Carson v. Grassmann, 182 N.C.App 521, 524, 642 S.E.2d 537, 540 (2007); Smith v. Dickinson, 57 N.C. App. 155, 158, 290 S.E.2d 770, 772 (N.C. App. 1982)(citing Smith v. Currie, 40 N.C.App. 739, 742 (1979)). The plaintiff argues that the debtors' method of obtaining mortgage loans was unreasonable. There is no indication, however, that the debtors acted in bad faith; and, by all accounts, their efforts were reasonable. Mrs. Kirkbrides' deposition established that in March 2006 the debtors contacted a mortgage broker, Mark Monroe, with whom they had worked on previous occasions. The broker maintained all of the debtors' current financial information, and regularly researched loans on their behalf. This was common practice for the debtors who were in the business of real estate development. In April 2006, the debtors asked Monroe to obtain financing for the Spencer Farlow Drive property. After checking with numerous lenders, the broker informed the debtors that they would be unable to acquire a new loan for the purchase of the property. The broker reported that the inability to obtain financing was a result of concurrent ownership of too many properties and insufficient reserves. The female debtor stated that she and her husband wanted to purchase the properties, and that she, in particular, was very upset and cried because everything was "crashing in." Deposition of Dolores Avoline Kirkbride, pg. 66 (June 16, 2009). Under the current economic climate, Mrs. Kirkbrides' assessment that the real estate market was crashing in has proven to be true.

Of the three properties, Spencer Farlow Drive was the least expensive. The purchase

agreement for Spencer Farlow Drive was contingent on a conventional loan in the amount of $363,200.00. Both Seahorse Place purchase agreements were contingent on conventional loan amounts near or in excess of the $1,000,000.00 mark. It would, therefore, seem self-evident that where financing was denied for the smallest loan amount it would most certainly be denied on the two higher priced properties.

  The plaintiff further asserts that in addition to the debtors' unreasonable loan acquisition method, the debtors acted unreasonably in not pursuing alternate financing. When a contract is silent as to a "time is of the essence clause," parties should close within a reasonable time of the specified closing date. <u>Fletcher v. Jones</u>, 314 N.C. 389, 333 S.Ed.2d 731 (1985). Both parties rely on this statement of law. The plaintiff argues that under <u>Fletcher</u>, the debtors' actions of failing to look for financing up until the time of closing was unreasonable. In contrast, the debtors assert that their actions were not unreasonable based upon the fact that they were never informed of a closing date. After April 2006, all conversations between the plaintiff and the debtors ceased. Approximately two weeks after learning of the debtors' lack of financing, the plaintiff placed all three properties for sale on the open real estate market. Two of the three properties have since been sold to third parties. At no time after April 2006 was a closing date communicated to the debtors, or a deed tendered. Had the plaintiff done so, it would have forced the debtors' hand in continuing to seek financing. As that is not the case, it is not unreasonable that the debtors believed the purchase agreements were null and void when the preceding conditions failed.

  The plaintiff's third and final example of the debtors' unreasonableness was the assertion that RBC bank did in fact loan monies to the debtors in April 2006. The argument reflected the

position that if RBC was willing to loan money to the debtors during the same time frame when financing was allegedly unavailable, the debtors acted unreasonably and in bad faith by failing to meet the condition of the purchase agreements.  The debtors refute the assertion that any financing was available, establishing that the monies from RBC were not "new monies."  RBC was unwilling to lend a new line of credit on the debtors' behalf.  The debtors were, however, able to work with RBC to refinance previous loan commitments .  Deposition of Dolores Avoline Kirkbride, pgs. 70-71 ( June 16, 2009).  Restructuring an already existing loan does not in and of itself illustrate an ability to obtain new financing, nor that the debtors acted unreasonably.

    The court finds that the purchase agreements entered into by the Kirkbrides and Alan Votta Construction, Inc. were subject to a financing condition.  After taking reasonable steps to acquire financing, the debtors were unable to meet the condition.  The result of the failed condition is an unenforceable agreement, under which the debtors are entitled to the return of escrow monies.

    Based on the foregoing, the debtor's motion for summary judgment is GRANTED.  The plaintiff shall return to the defendants the total of $75,000.00 in earnest money: $30,000.00 for 103 N. Seahorse Place; $30,000.00 for 109 N. Seahorse Place; and $15,000.00 for 405 Spencer Farlow Drive.  All other relief is denied.

END OF DOCUMENT